**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| THERESA CUSATIS, | |
| Plaintiff, | CIVIL ACTION NO.: 4:22-cv-156 |
| v. | |
| ATLANTIC WASTE SERVICES, INC., | |
| Defendant. | |

## O R D E R

Plaintiff Theresa Cusatis sued Atlantic Waste Services, Inc. ("Atlantic Waste"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), alleging, among other things, that she was sexually harassed and discriminated against in her workplace.  (Doc. 1.) Presently before the Court is Atlantic Waste's Motion for Summary Judgment, in which it argues that Plaintiff has failed to raise a genuine issue of material fact that the harassment she allegedly suffered was severe and pervasive, that she was treated differently because of her age, or that she was retaliated against.  (Doc. 23.)  Plaintiff filed a Response, (doc. 32), and Defendant filed a Reply, (doc. 38).  For the reasons below, the Court **GRANTS** Defendant Atlantic Waste's Motion for Summary Judgment.  (Doc. 23.)

### BACKGROUND

#### I.      Plaintiff's Position at Atlantic Waste

Atlantic Waste is a corporation in Pooler, Georgia, that provides waste collection and disposal services.  (Doc. 32-1, p. 1.)  Ben B. Wall, Sr. ("Burke Wall") founded the company in

1998.  (Id.)  At all relevant times, Burke Wall served as the company's CEO, and Ben B. Wall, Jr. ("Ben Wall") served as the Vice President.  (Id. at pp. 1–2.)  Plaintiff Theresa Cusatis is a woman over the age of sixty.  (Id. at p. 39 (quoting doc. 1, p. 23).)  In 1999, shortly after founding Atlantic Waste, Burke Wall hired Plaintiff as a salesperson with the company.  (Id. at p. 2.)  Plaintiff generally performed well in this role and, sometime between 2012 and 2013, was promoted to Sales Manager.  (Id.)  In her position as Sales Manager, Plaintiff was tasked with new personnel management and administrative responsibilities.  (Id.)  According to Ben Wall, Plaintiff struggled in this new position, and, in 2014, he issued her a formal written warning about her job performance.  (Id. at pp. 9–10; doc. 23-1, pp. 2–3; doc. 23-6, p. 1.)  The warning advised that failure to meet her job responsibilities could result in disciplinary action, including termination. (Doc. 23-6, p. 1.)  Plaintiff agreed with the written warning and admitted that she sometimes lacked attention to detail.  (Doc. 32-1, p. 13; doc. 23-2, pp. 15–16.)  She also admits she was informed that her math and computation skills needed to be improved.  (Doc. 23-2, p. 15; doc. 23-1, p. 3.)

In 2015, Atlantic Waste hired Jeff Freas, who had significant industry experience, as Controller, and Freas soon took on additional duties as General Manager.  (Doc. 32-1, p. 14.)  The Walls directed Freas to provide day to day support for the various department heads and improve efficiencies with a focus on financial reporting and accountability, but Plaintiff continued to report directly to the Walls.  (Id. at pp. 14–15; see doc. 23-2, p. 10.)  Nonetheless, Plaintiff maintains that Freas directed her to raise issues with him first and to not go to the Walls.  (Doc. 23-2, p. 18.) Freas's management style sometimes created friction between department heads, including with Plaintiff.  (Doc. 32-1, pp. 15–16.)  Plaintiff testified that, beginning in 2016, she believed that Atlantic Waste was looking to replace her as Sales Manager.  (Id. at p. 16; see doc. 23-2, pp. 17, 27.)  Ben Wall testified that "while [Plaintiff] was not a bad Sales Manager, neither was she a good

one," and that the "requirements of the Sales Manager position outgrew [her] capabilities." (Doc. 23-1, p. 5.) By late 2019, Atlantic Waste had hired a recruiter to find a replacement for Plaintiff in the position as Sales Manager. (Doc. 32-1, pp. 16–17.)

## II. Alleged Inappropriate Conduct at Atlantic Waste

During Plaintiff's time at Atlantic Waste, the workplace was permeated with frequent joking and teasing, including about age. (Id. at p. 17). This teasing included bawdy and risqué language, and Plaintiff participated in this culture. (Id. at pp. 17–18; doc. 23-2, p. 21.) Plaintiff agrees that she and Freas would yell at each over disagreements about how things should be managed. (Doc. 32-1, p. 18; doc. 23-2, p. 19.) Plaintiff never complained to anyone at Atlantic Waste that the culture of joking, teasing, or yelling was making her uncomfortable and needed to stop. (Doc. 32-1, p. 18.)

Ashley Bashlor, who oversaw Atlantic Waste's Human Resources department during Plaintiff's employment, testified that Plaintiff engaged in "teasing," "used foul language[,] and told stories about dates she had been on, her sex life, and other personal matters." (Doc. 23-4, p. 2.) Bashlor also knew of an incident years earlier when another Atlantic Waste employee exposed his genitals while in a car with Plaintiff, and Bashlor claimed that Plaintiff "thought [the story] was funny and liked telling [it]." (Doc. 32-1, pp. 18–19; doc. 23-4, p. 2.) Plaintiff admitted that she joked about this incident and never asked Atlantic Waste to take any further action related to that employee. (Doc. 32-1, p. 19; doc. 23-2, p. 34.)

Plaintiff contends that, after she brought her cousin to Atlantic Waste's 2019 Christmas party, Freas asked her in a manager's meeting if she was "having sex with [her] cousin," and other managers laughed. (Doc. 32-1, p. 21.) Plaintiff also asserts that Freas asked her in earlier manager's meetings if she was gay. (Id.) Plaintiff claims that Burke Wall frequently made

comments to her asking when she was "going to get a boyfriend." (<u>Id.</u> at p. 22.)  Freas denies making any vulgar comments or personal attacks toward Plaintiff or hearing anyone else make vulgar or sexual comments during manager's meetings.  (<u>Id.</u>)  Ben Wall testified that while there was joking and teasing during manager's meetings, Plaintiff participated in the joking and teasing, and she never complained to him that she felt uncomfortable or wanted the personal conversations, joking, or teasing to stop.  (<u>Id.</u> at p. 23.)

Also at the 2019 office Christmas party, Burke Wall commented, about Plaintiff, that "you all would not believe how old she is," which he had done at previous parties.  (<u>Id.</u> at p. 40.)  On another date, Ben Wall walked by Plaintiff's office with someone who asked "who is in there[?]" while pointing to Plaintiff's office, to which Ben Wall responded "our dinosaur."  (<u>Id.</u>)

Plaintiff also claims that in January 2020, she was in Freas's office, and he stood up, leaned against his desk, embraced her while pulling her towards his body, and tried to kiss her.  (<u>Id.</u> at p. 24–25.)  Besides Plaintiff and Freas, there were no witnesses to this incident.  (<u>Id.</u> at p. 25.)  Plaintiff saw Bashlor directly following the incident, and, while she did not recount the incident to Bashlor, she did refer to Freas as a "creep."  (<u>Id.</u>)  Bashlor took Plaintiff's statement to be "referring to [Plaintiff's] ongoing issues with [Freas] related to the performance of her job duties."  (<u>Id.</u> (quoting doc. 23-4, p. 3).)  Plaintiff recalls another incident on January 31, 2020, where Freas spread his legs, placed his hand on her back, and tried to pull her onto his lap, but stopped when Bashlor entered the room.  (<u>Id.</u> at pp. 25–26.)  Bashlor, who recalled seeing the two embracing, testified that Plaintiff had her back to him and was leaning back and that the embrace appeared "mutual."  (<u>Id.</u> (quoting doc. 23-4, p. 3).)  Plaintiff never complained to Bashlor or anyone else about this second incident.  (<u>Id.</u> at p. 27.)

### III.    Investigation and Termination of Freas

In February 2020, another employee, Jessica Craig, complained to Bashlor and Ben Wall that Freas made inappropriate comments and touched her in a way that made her uncomfortable. (Id. at pp. 27–28.)  As part of Atlantic Waste's investigation of this incident, Plaintiff was asked whether she had any complaints about Freas.  (Id. at p. 28.)  Ben Wall testified that Plaintiff stated that she had complaints, but that she would not provide him more details.  (Id.; doc. 23-1, pp. 5–6.)  Ben Wall then asked Plaintiff to speak with the company's attorneys and provide a statement, but she declined, asking if she could write her own statement instead, which Ben Wall agreed to. (Doc. 32-1, p. 29.)  Plaintiff claims that she wrote and delivered the statement to Atlantic Waste through Ben Wall on February 19, 2020.  (Doc. 32-2, p. 4).  Ben Wall and Bashlor both asserted that they did not see the statement until Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC").   (Doc. 23-1, pp. 5–6; doc. 23-4, pp. 3–4).   Plaintiff's statement outlines the hugging incidents with Freas and the general nature of their working relationship.  (See generally doc. 23-11.)  Plaintiff also testified that she believed she received a subpoena to testify in a court proceeding and that Atlantic Waste "figured [she] was going to be standing up for . . . Craig."  (Doc. 23-2, p. 35.)  Plaintiff never testified at the court proceeding. (Doc. 32-1, p. 42.)

Because of its internal investigation into Craig's allegations about Freas, and mindful of Plaintiff's general complaints about Freas, Atlantic Waste demoted Freas from General Manager back to Controller, required him to review the company's policies against harassment, discrimination, and retaliation, directed him to stay away from Craig, cautioned him not to retaliate against anyone, and warned him that further similar conduct would lead to his termination.  (Id. at

p. 30.)  Atlantic Waste then issued a memo outlining the restructuring and reaffirming the existing reporting relationships.  (Id.)

Following Freas's demotion, Bashlor testified that she "tried to keep a closer eye on him." (Id.; doc. 23-4, p. 4.)  Craig worked in a cubicle near where the company's drivers congregated, beside the time clock and vending machines.  (Doc. 32-1, pp. 30–31.)  Bashlor noticed that when Freas had to go to the time clock or vending machines, or to speak with the drivers, he would take a longer route around the building so that he would avoid Craig.  (Id. at p. 31.)  In May 2020, however, Craig reported that while Freas had been keeping his distance, he had recently walked past her desk which made her uncomfortable, and she decided to resign.  (Id.)  While she did not report that Freas talked to her or touched her, Atlantic Waste fired Freas the same day.  (Id.)

## IV.  Plaintiff's Removal from the Sales Manager Position

On June 29, 2020, Burke Wall called Plaintiff, angry that the sales team had lost an account with a long-time customer because some calls and emails were not responded to.  (Id. at p. 32; doc. 23-2, pp. 26–27.)  He told Plaintiff that he was upset about the loss of another customer—as there had been other recent losses—and that if the sales department did not improve its performance, he would have to "make some changes."  (Doc. 32-1, pp. 32–33.)  This was not the first time Burke Wall threatened to fire Plaintiff.  He would get angry and call Plaintiff "on a regular basis," and, over the years, he threatened to terminate her several times.  (Id.; doc. 23-2, pp. 27–28.)  When Burke Wall threatened to make changes to the sales department in the June 29, 2020, conversation, Plaintiff responded, "[W]hy don't you start with me?"  (Doc. 32-1, pp. 33–34; doc. 23-2, p. 27.)  According to Plaintiff, Burke responded, "[Y]es, you are fired, your severance package will be ready in the morning."  (Doc. 32-1, p. 34; doc. 23-2, p. 27.)

About thirty minutes later, Ben Wall called Plaintiff and told her she was not fired, she could keep her job, and to take a few days off and then talk with him.  (Doc. 32-1, pp. 34–35; doc. 23-2, p. 28.)  Sometime later, Plaintiff and Ben Wall met, and he told Plaintiff that he wanted her to come back to work in her choice of these roles: (1) an outside sales job at a salary of $90,000 to $100,000, with the opportunity to make more money if she expanded the clients in the territory; or (2) an inside sales job at a salary of $91,000 (too high for the position, but in recognition of her years of service).  (Doc. 32-1, p. 35.)  Plaintiff contends that both positions would have amounted to a demotion.  (Id. at pp. 35–36; doc. 23-2, p. 29.)  Ben Wall also offered Plaintiff a payout of $100,000 if she stayed through at least the end of 2020 and, mindful of her past comments about retiring soon, noted that the company could plan for and give her a good retirement party at the end of 2020 if that is what she wanted.  (Doc. 32-1, p. 36; doc. 23-2, pp. 10, 29.)

Plaintiff ultimately did not accept these offers and stated she did not want to return to Atlantic Waste because she was being mistreated and underappreciated.  (Doc. 32-1, p. 37–38; doc. 23-2, pp. 28–29.)  Plaintiff also believed she had been "fighting for [her] job for three years" and, given the constant and recent questioning of her job performance, felt she was on the verge of being fired or demoted.  (Doc. 32-1, p. 38.)  Ben Wall and Plaintiff spoke multiple times after June 29, and Atlantic Waste continued to pay her through July 17, but she did not return to work.  (Id. at p. 36.)

## V.    Procedural History

Prior to suing Atlantic Waste, Plaintiff filed a Charge of Discrimination with the EEOC.  (Id. at p. 43.)  The EEOC issued a Determination and Notice of Rights letter dated March 9, 2022.  (Id.; doc. 32-4, p. 2.)  The EEOC Notice informed Plaintiff that she had ninety days from its receipt

to sue.  (Doc. 32-1, p. 44–45.)  Plaintiff maintains that she did not receive the EEOC Notice until after March 28, 2022, the date the Notice was postmarked.  (Id. at p. 43; see doc. 32-4, p. 1.)

Plaintiff filed her Complaint on June 24, 2022, 107 days after the date on the EEOC Notice. (Doc. 32-1, p. 45; see doc. 1.).  In the Complaint, Plaintiff alleges claims of hostile work environment and retaliation under Title VII, and a claim of age discrimination under the ADEA. (Doc. 1, pp. 17–27.)  Atlantic Waste filed the at-issue Motion for Summary Judgment, arguing that Plaintiff failed to timely file the Complaint and that, regardless of the timeliness issue, her claims failed because she cannot raise a triable issue of fact on any of them.  (See generally doc. 23, pp. 11–25.)  Plaintiff filed a Response, (doc. 32), and Atlantic Waste filed a Reply, (doc. 38).[1]

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any

---

[1]  After authorization by the Court, the parties engaged in additional briefing regarding whether Plaintiff timely brought this action.  (See docs. 40, 43, 44, 45).

material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove its case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).  Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence.  Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

### I.  Timeliness of this Action

Atlantic Waste first argues that Plaintiff failed to timely bring her claims.  (Doc. 23, pp. 11–12.)  Both Title VII and the ADEA required Plaintiff to file her complaint within ninety days

of receipt of the EEOC's Notice of Right to Sue.  42 U.S.C. § 2000e-5(f) ("[W]ithin ninety days after the giving of such notice a civil action may be brought."); 29 U.S.C. § 626(e) ("A civil action may be brought . . . within 90 days after the date of the receipt of such notice."); see also Santini v. Cleveland Clinic, 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII and ADEA actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge.").

Atlantic Waste argues that the EEOC Notice is dated March 9, 2022, (doc. 23-9), yet Plaintiff did not bring suit until 107 days later on June 24, 2022, (doc. 1-1).  In response, Plaintiff provides supplemental evidence that, while the right to sue letter was dated March 9, it was not mailed until March 28, 2020, and thus she received it within ninety days before she filed this lawsuit.  (See docs. 32-4, 32-5, 32-6.)  In the Complaint, Plaintiff alleged that while her EEOC Notice of Right to Sue was dated March 9, 2022, it was post-marked March 28, 2022.  (Doc. 1, p. 17.)  In response to Atlantic Waste's Motion for Summary Judgment, Plaintiff submitted, for the first time, a copy of this post-marked envelope.  (Doc. 32-4.)  Plaintiff produced, also for the first time, additional documents corroborating this post-marked date.  Plaintiff submitted email correspondence between Plaintiff's counsel and the EEOC investigator from June 6, 2022.  (Doc. 32-6.)  In the email, Plaintiff's counsel noted that the right to sue letter was dated March 9, 2022, while the mailed envelope is post-marked March 28, 2022, and that counsel experienced difficulties accessing Plaintiff's online EEOC portal.  (Id. at p. 2.)  The EEOC Investigator responded that he would upload the requested Notice to Plaintiff's online portal, and he assured Plaintiff's counsel that, because of the post-marked date, the Notice would not expire until June, 26, 2022.  (Id. at p. 1.)  Plaintiff has also provided another email, also dated June 6, 2022, showing that the EEOC Notice was uploaded to Plaintiff's online EEOC portal.  (Doc. 32-5.)

Atlantic Waste concedes that if Plaintiff received the EEOC Notice after March 28, 2020, she timely brought this suit.  (Doc. 38.)  Yet Atlantic Waste contends that the Court should not consider Plaintiff's supplemental evidence because Plaintiff did not produce it during the regular course of discovery.  (Id. at p. 1–5.)  Atlantic Waste also argues that the documents do not establish an interference of timely filing.  (Doc. 43, p. 8.)  But a jury could infer from the documents that Plaintiff did not receive her EEOC Notice until after March 28, 2020.  Thus, the essential question is whether the Court can consider the supplemental evidence.

Federal Rule of Civil Procedure Rule 26 requires parties to make certain disclosures of information they wish to use in support of their claim or defense, and to timely supplement their disclosures if a party learns they are incomplete.  Fed. R. Civ. P. 26(a),(e).  Thereby, under Rule 37(c), when a party fails to provide this required information, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Atlantic Waste contends that because it has not had a chance to conduct discovery related to the supplemental documents, and because Plaintiff has not justified her delayed production, the Court should exclude this evidence under Rule 37.  (Doc. 38, p. 4.)

Plaintiff concedes that, as the failure to produce the documents was an inadvertent mistake, it was not "substantially justified," but she argues it was nevertheless harmless.  (Doc. 40, p. 7.)  Atlantic Waste, however, claims that it was harmed because "the documents fall far short of conclusiveness, and Atlantic Waste is prejudiced by the inference of timely filing that Plaintiff claims the documents provide given the absence of potentially countervailing evidence which Atlantic Waste has not had an opportunity to develop because of the untimely disclosure."  (Doc. 43, p. 6.)

The Court has broad discretion to determine whether an untimely production of evidence is substantially justified or harmless for purpose of Rule 37(c)(1).  In exercising that discretion,

> a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (quoting Two Men & a Truck Int'l, Inc. v. Res. & Com. Transp. Co., No. 4:08-cv-067, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008)).

Turning to the first factor, the Court is not convinced that Atlantic Waste was surprised by Plaintiff's late production.  Plaintiff directly referenced the postmarked envelope in the Complaint and asserted that the EEOC "first issued the same notice electronically on June 6, 2022."  (Doc. 1, p. 17.)  The post marked envelope, which is enough alone to create a genuine dispute of material fact on the overriding timeliness issue, provides no additional facts than what Plaintiff already asserted in the Complaint.  The other supplemental documents only bolster Plaintiff's assertion that she did not receive the Notice before March 28, 2020.  Although Atlantic Waste's broadly worded discovery requests required Plaintiff to provide these documents, Atlantic Waste was aware (through the Complaint) that Plaintiff at least claimed to have a copy of the postmarked envelope.

As for the second factor, Atlantic Waste had the ability to cure any surprise by following up with Plaintiff's counsel on the post-marked envelope during the lengthy discovery period.  Yet it does not appear that Atlantic Waste did so or otherwise investigated Plaintiff's assertion that her Notice was received within 90 days before the filing of her Complaint.  Additionally, Atlantic Waste did not need copies of the supplemental documents to know that it needed to investigate

this issue.  For instance, given the Complaint's assertions, Atlantic Waste could have asked Plaintiff during her deposition when she received her right to sue letter.  Likewise, it could have sent discovery requests to the EEOC to fact-check Plaintiff's contention.

Considering the third factor, allowing this evidence to be considered at the summary judgment stage will only minimally disrupt this litigation.  For one, this evidence does not impact Atlantic Waste's other meritorious arguments that the Court addresses below.  Moreover, even if Plaintiff's claims survived those arguments, any supplemental discovery on the timeliness issue would only be necessary for trial because the supplemental documents, at the very least, create a genuine dispute of material fact precluding summary judgment.  Further, such discovery would be minimal and could be accomplished well before trial.

Finally, this evidence is paramount to Plaintiff's case.  The Court cannot assess whether Plaintiff timely filed her Complaint without this evidence.  See Tolerico v. Home Depot, 205 F.R.D. 169, 176–77 (M.D. Pa. 2002) (refusing to exclude evidence of an undisclosed EEOC questionnaire that was essential to the plaintiff's case even when the defendant had no notice of this questionnaire and no reason to know of its existence).

The Court does not condone Plaintiff's counsel's failure to disclose the supplemental evidence sooner.  Unquestionably, counsel should have produced it.  That said, counsel's failure does not appear to be borne of nefarious motive.  This was not a "gotcha" attempt or an attempt to spring evidence on opposing counsel that could have been discredited with discovery.[2]  Cf., Measured Wealth Private Client Grp., LLC v. Foster, No. 20-80148-CIV, 2020 WL 3477533, at

---

[2] Any allegations of playing "gotcha," would be more properly laid against Atlantic Waste, which seeks to capitalize on Plaintiff's inadvertent failure to produce the post-marked envelope even though Atlantic Waste never followed up on its request for the document after Plaintiff referenced and relied on it in the Complaint.

*1 (S.D. Fla. June 25, 2020) ("Discovery is not a game of 'gotcha,' where one counsel attempts to pounce on another counsel's inadvertent . . . error . . . to try and gain a tactical advantage."). Particularly given that Atlantic Waste did not specifically pursue discovery on this issue from Plaintiff, her counsel, or the EEOC, Plaintiff was not on notice that Atlantic Waste planned to challenge her factual assertion.

In sum, Plaintiff's failure to provide the postmarked envelope and other documents evidencing that she sued Atlantic Waste within ninety days of receiving the EEOC notice was harmless.   While Plaintiff no doubt should have been more mindful of her disclosure responsibilities, her failure did not meaningfully deprive Atlantic Waste from mounting a compelling defense.   See Williams v. Tangipahoa Par. Sch. Sys., No. 2:09-cv-3597, 2010 WL 4363572, at *4 (E.D. La. Oct. 27, 2010) (supplemental evidence of date of receipt of EEOC notice, which plaintiff only produced after discovery in response to a summary judgment motion, was sufficient to establish lawsuit's timeliness).   Accordingly, the Court will consider the untimely submitted evidence.   That evidence creates a genuine dispute about whether Plaintiff received the Notice after March 28, 2020.   Therefore, the Court thus **DENIES** Atlantic Waste's Motion for Summary Judgment on this ground.

## II.  Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).   While the term is not explicitly mentioned in the statute, the Eleventh Circuit Court of Appeals has clarified that sexual harassment can constitute discrimination based on sex for purposes of Title VII.  See Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en

banc).  To state a claim for sexual harassment under Title VII, a plaintiff must allege facts showing: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of employment; and (5) there is a basis for holding the employer liable.  Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).

Still, "Title VII is not a 'general civility code.'"  Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  Although gender-specific conduct that imposes a change in the terms or conditions of employment based on sex will violate Title VII, "general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable."  Id.  For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher, 524 U.S. at 788 (internal quotations and citations omitted).

Accordingly, sexual harassment constitutes sex discrimination under Title VII "only when the harassment alters the terms or conditions of employment."  Mendoza, 195 F.3d at 1245.  To make out a claim of hostile work environment, "an employer's harassing actions toward an employee do not constitute employment discrimination under Title VII unless the conduct is 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"  Id. (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

A plaintiff can show that workplace harassment altered the terms and conditions of her employment in two ways.  One is to show that "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands."  Id. at 1245.  The second is to show that the

employee experienced a "hostile work environment": that the sexual harassment was "sufficiently severe and pervasive to effectively result in a change (sometimes referred to as a constructive change) in the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned."  Id.; see also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1312 (11th Cir. 2001) ("To prevail on a hostile environment claim, a plaintiff must demonstrate that the sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment.").  Hostile work environment claims are "different in kind" from tangible employment actions because they are "based on the cumulative effect of individual acts" of harassment which may not be independently actionable. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).

**A.      The Alleged Harassment Was Unwelcome.**

Atlantic Waste first argues that Plaintiff cannot prevail on a sexual harassment claim because she has not shown that the alleged harassment was unwelcome.  (Doc. 23, pp. 12–14.)  To determine whether the conduct was unwelcome, courts consider "whether [the plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome."  Meritor, 477 U.S. at 68. Conduct will be unwelcome if the plaintiff "did not solicit or incite it, and . . . the employee regarded the conduct as undesirable or offensive."  Henson v. City of Dundee, 682 F.2d 897, 903 (11th Cir. 1982).  The Supreme Court has also noted that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."  Meritor, 477 U.S. at 68.

Atlantic Waste argues that Plaintiff cannot show the harassment was unwelcome because she actively contributed to the "sexually explicit environment."  (Doc. 23, p. 13.)  Plaintiff admits that she engaged in the lewd comments, banter, and joking about sexually explicit matters.  (Doc.

32-1, p. 18.)  Moreover, she never reported to anyone that she objected to such comments being made and thus seemingly acquiesced in the culture by continually engaging.  (Id.)  The Court agrees that, standing alone, the at-issue comments, made within the context of a boorish and vulgar working environment in which Plaintiff routinely participated, could not establish unwelcome conduct to support a claim of sexual harassment.  See Weinsheimer v. Rockwell Int'l Corp., 754 F. Supp. 1559, 1563–64 (M.D. Fla. 1990), aff'd, 949 F.2d 1162 (11th Cir. 1991) (plaintiff failed to establish conduct was unwelcome where work environment was filled with "[c]rude language and storytelling" that was "engaged in by generally all employees" and there was evidence that plaintiff directly engaged by telling "sexual stories" or making "sexual gestures"); see also Coyle v. Dakko Prop. Mgmt., Inc., No. CV-07-RRA-00583-S, 2009 WL 10687801, at *16–19 (N.D. Ala. Oct. 1, 2009) (no evidence plaintiff subjectively perceived the actions as harassment when evidence showed plaintiff engaged in some of the lewd talk and never expressed any indication that she was uncomfortable with how her co-worker was treating her).

That said, Plaintiff does not rely exclusively on the comments as Atlantic Waste contends. She also relies on incidents where Freas embraced her without her consent and pressed her body against his.  Plaintiff has produced sufficient evidence that this conduct was unwelcome.  On the first occasion, Plaintiff alleges that Freas called her into his office, embraced her close to his body and acted as if he was going to kiss her.  (Doc. 32-1, pp. 24–25.)  Upon leaving his office, Plaintiff saw Bashlor and referred to Freas as a "creep."  (Doc. 23-2, p. 20; doc. 23-4, p. 3.)  Plaintiff's testimony that the encounter was non-consensual coupled with the evidence showing she called him a creep just moments after the alleged embrace tends to show that the conduct was unwelcome. Construing this evidence in the light most favorable to Plaintiff, she has presented a fact question of whether Freas's behavior towards her can be classified as unwelcome.

**B.      The Alleged Harassment Was not Sufficiently Severe or Pervasive.**

Atlantic Waste next argues that Plaintiff cannot prevail on a hostile work environment claim because she cannot show that the alleged conduct was sufficiently severe or pervasive.  (Doc. 23, p. 14–19.)  "Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive."  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000).  "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive."  Id.  In other words, the environment must be one "that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so."  Faragher, 524 U.S. at 787.  As the Court has already found evidence sufficient to show that the conduct was unwelcome, the Court will assume without deciding that Plaintiff has also satisfied the subjective component, and thus turns to the objective component.

To determine whether the harassment was objectively severe and pervasive, courts consider, among other factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).  In considering each of these factors, courts are required to employ "a totality of the circumstances approach, instead of requiring proof of each factor individually."  Hulsey, 367 F.3d at 1248.

As far as the Court can tell, Plaintiff's hostile work environment claim is based in part on certain comments, specifically that Freas asked, on two separate occasions, if she was "having sex with [her] cousin," and if she was gay, (doc. 32-1, p. 21), and that Burke Wall's frequent comments

to her about when she was "going to get a boyfriend," (id. at p. 22). She also cites the two instances when Freas made physical contact with her: (1) where he leaned against his desk and embraced her while pulling her towards his body, (id. at p. 24.); and (2) where he spread his legs, placed his hand on her back, and tried to pull her onto his lap, (id. at pp. 25–26). While these comments and actions are unquestionably inappropriate, they do not amount to the standard for severe or pervasive harassment.

Insofar as Plaintiff relies on the comments directed at her as harassing, the Court has already found that Plaintiff's active participation in a teasing culture undermines her attempt to use those comments as the basis of her claim. See supra Discussion Section I.A. There is ample evidence in the record that Atlantic Waste was permeated with a culture of teasing and inappropriate comments, which Plaintiff admittedly participated in. (Doc. 32-1, pp. 17–18; doc. 23-4, p. 2; doc. 23-2 pp. 21–22.) Furthermore, Plaintiff never reported these comments or otherwise made it known that any of the teasing was making her uncomfortable, nor has she shown in any way how these comments impacted her performance at work. In other words, even viewing the evidence in the light most favorable to Plaintiff, she has not shown that these remarks amount to more than mere "mere offensive utterances." Breda v. Wolf Camera, Inc., 148 F. Supp. 2d 1371, 1374, 1381 (S.D. Ga. 2001); id. ("[M]erely inserting every last rude or sexualized comment/gesture/joke into a lengthy list accumulated over years of employment does not . . . a Title VII claim make.") Again, the Court does not condone Plaintiff's coworkers' remarks, but these stray comments do not rise to the level of severe and pervasive conduct contemplated under Title VII. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (reiterating that the "mere utterance . . . which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII").

Turning then to the two instances when Freas made physical contact with Plaintiff, her claim still fails.  Plaintiff argues, with no supporting precedent or even comparable cases, that the conduct was "frequent" under the first factor because the two hugging instances occurred within two weeks of each other.  (Doc 32, p. 15.)  The Court disagrees.  Two isolated incidents of this nature, even in the same month, do not amount to the type of frequent conduct that would significantly alter an employee's ability to work.  See Murdoch v. Medjet Assistance, LLC, 294 F. Supp. 3d 1242, 1263 (N.D. Ala. 2018) (even twice-monthly hugs for six months—with no further evidence that the hugs were sexual—were insufficient for a jury to find the conduct objectively severe); Orquiola v. Nat'l City Mortg. Co., 510 F. Supp. 2d 1134, 1150–51 (N.D. Ga. 2007) (two incidents where coworker told the plaintiff "that he had a crush on her, attempted to hold her hand, kissed her on the cheek, and told her that he wanted to have sex with her" did not amount to severe and pervasive conduct sufficient to support a hostile work environment claim); cf. Parker v. Atlanta Newspapers Name Holding Corp., No. 05-15722, 2006 WL 1594427, *3 (11th Cir. June 12, 2006) (conduct was frequent where the plaintiff endured unwelcome comments "every single time she was at work" for several months).

But even assuming the two hugs were sufficiently frequent, "frequency . . . does not compensate for the absence of the other factors."  Mendoza, 195 F.3d at 1248.  Plaintiff has never stated that she was scared for her physical safety or that Freas made any further sexual advances towards her.  Plaintiff's only other argument in her Response is that Freas's conduct impacted her job performance.  Yet she only offers two examples: (1) when Plaintiff "attempted to discuss an issue related to sales" she was "cut short" when Freas tried to hug her; and (2) when "she had to take time to prepare her statement."  (Doc. 32, p. 15.)  Two conversations being cut short and

drafting a two-page statement fall well short of the kind of "severe interference" required by the Eleventh Circuit's precedent.

Construing all the evidence in Plaintiff's favor, that evidence amounts to a culture of teasing and inappropriate comments and two incidents where a coworker attempted to embrace her without her consent. This conduct falls well below even the conduct endured by other plaintiffs that courts within this Circuit have found to not be actionable under Title VII. See Lockett v. Choice Hotels Int'l, Inc., 315 F. App'x. 862, 866–68 (two encounters where alleged harasser tried to hug plaintiff and another where he touched her on buttocks, even when coupled with frequent inappropriate remarks, did not amount to objectively severe and pervasive harassment); Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 1327–28 (N.D. Ga. 2005) (attempts by harasser to hug, kiss and touch plaintiff, as well as incidents where she rubbed her breasts against his back, even when coupled with statements of her desire to be romantically involved with plaintiff were still "isolated events" and were "not frequent enough to amount to the continuous barrage of harassment which the Eleventh Circuit deems actionable"); Mendoza, 195 F.3d at 1248–49 (instances where alleged harasser said "I'm getting fired up," rubbed his hip against plaintiff's while hugging her shoulder and smiling, made "sniffing" sounds while looking at the plaintiff's groin area, and "constant[ly]" followed plaintiff around did not amount to severe or pervasive conduct).

Absent any further evidence, or any supporting law by Plaintiff, the Court fails to see how Freas's conduct, even when considered with the other evidence cited by Plaintiff, amounted to sexual harassment under Title VII. See, Benton v. City of Atlanta, No. 1:14-cv-02799-WSD-LTW, 2016 U.S. Dist. LEXIS 104426, at *22 (N.D. Ga. July 11, 2016) ("Only when combined with more egregious or objectiona[ble] conduct, such as more extreme physical contact, conduct

by supervisors, or conduct so frequent it interferes with job performance, will harassment be considered hostile.").  While Freas's conduct may have been inappropriate and made Plaintiff uncomfortable, it is simply not sufficient to sustain a claim under Title VII.

**C.    Plaintiff Has Failed to Provide a Basis for Holding Atlantic Waste Liable.**

Atlantic Waste also argues that, even if Plaintiff could establish that the alleged harassment was severe and pervasive enough, her claim nevertheless fails because there is no basis for holding Atlantic Waste liable.  (Doc. 23, pp. 20–21.)  "An employer 'is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'"  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002) (quoting Faragher, 524 U.S. at 807).  "The employer will be strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim."  Id.

Plaintiff has not submitted evidence that Freas was her supervisor.  In her Response, Plaintiff summarily characterizes Freas as her "immediate supervisor" without any citation to support this contention.  (Doc. 32, p. 16.)  The record reveals that Plaintiff always reported directly to the Walls and did not report to Freas.  (Doc. 23-2, p. 10; doc. 23-3, p. 1; doc. 23-8.)  While Plaintiff "disputes" this contention in her response to Atlantic Waste's Statement of Material Facts, she only states that Freas was "controlling" and told her to bring issues to him and not to go to the Walls.  (Doc. 32-1, p. 15; doc. 23-2, p. 18.)  At the same time, Plaintiff also admitted that the Walls never directed her to take orders from Freas and that the Sales Manager position reported directly to the Walls.  (Doc. 23-2, pp. 10, 18.)  Freas' unauthorized direction that Plaintiff report to him cannot, without more, promote him to the role of her supervisor.  Plaintiff provides nothing more than conclusory allegations to support her contention that Freas was her supervisor.  Benton, 2016

U.S. Dist. LEXIS 104426, at *21 (quoting <u>Davis v. U.S. Postmaster Gen.</u>, 190 F. App'x 874, 877 (11th Cir. 2006)) ("In establishing the[] elements [of a hostile work environment claim], a plaintiff must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions.").

Turning then, to whether Atlantic Waste could still be held liable for Freas's behavior, "[w]here the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." <u>Miller</u>, 277 F.3d at 1278 (citing <u>Breda v. Wolf Camera & Video</u>, 222 F.3d 886, 889 (11th Cir. 2000)). To hold an employer liable for a coworker's harassment, then, a plaintiff "must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." <u>Id.</u>

Plaintiff contends that Atlantic Waste should be liable because it had actual notice of Freas's harassing behavior. (Doc. 32, pp. 16–17.) She submits that because Bashlor witnessed a hug between Plaintiff and Freas, and because Plaintiff commented to Bashlor that Freas was a "creep," Bashlor knew of the harassment. (<u>Id.</u>) Bashlor, on the other hand, testified that she believed the hug to be "mutual" and that Plaintiff never made another comment about it to her. (Doc. 23-4, p. 3.) She also stated that she believed Plaintiff's reference to Freas as a "creep" was about Plaintiff's ongoing issues with him related to the performance of her job duties, as Plaintiff did not expound on the comment or ask Bashlor to do anything. (<u>Id.</u>) Furthermore, beyond these two instances, Plaintiff never complained to Bashlor about Freas's allegedly inappropriate behavior. (<u>Id.</u> at pp. 2–3.)

Bashlor's observations are insufficient to put Atlantic Waste on notice of Freas's conduct. Plaintiff had the opportunity to report any inappropriate conduct by Freas, but she chose not to.

(Id. at pp. 3–4.)  Plaintiff has simply provided no indication that Atlantic Waste should have known of the conduct and failed to remedy it.  See Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1365 (11th Cir. 1999) (the fact that plaintiff had, in passing, shown a supervisor an inappropriate note given to her by her harasser, without explaining it was part of a pattern or lodging a formal complaint, could not put the employer on notice); Miller, 277 F.3d at 1278 (plaintiff's complaint to supervisor, that alleged harasser should be told to "watch what he says to me," was a "generalized comment" that did not provide actual notice); Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship, 490 F.3d 1302, 1309–11 (11th Cir. 2007) (employer was not placed on notice where employee complained to supervisor of "harassing" phone calls made to her which the supervisor interpreted as "annoying" because the plaintiff never "suggested that any sexually explicit remarks or even sexual innuendos were made during these phone calls").

In sum, both because Plaintiff has failed to allege sufficiently severe or pervasive conduct, and because she has failed to show that Atlantic Waste had notice of Freas's behavior and did not remedy it, Plaintiff has failed to raise evidence sufficient to make a claim of sexual harassment against Atlantic Waste.  Accordingly, the Court **GRANTS** Atlantic's Waste's Motion for Summary Judgment on Plaintiff's sexual harassment claim.

## III.   Age Discrimination

Atlantic Waste next argues that Plaintiff has failed to submit sufficient evidence to support a claim of age discrimination under the ADEA.  (Doc. 23, pp. 22–24.)  "The ADEA prohibits an employer from discriminating against an employee who is at least 40 years old on the basis of age."  Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 871 (11th Cir. 2011) (citing 29 U.S.C. §§ 623(a)(1)).  "A plaintiff may support a claim under the ADEA through either direct evidence or circumstantial evidence."  Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1270 (11th

Cir. 2014). "To ultimately prevail, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" Id. (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009)). In other words, "the ADEA requires that age be the reason that the employer decided to act." Mora v. Jackson Mem. Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (internal quotations omitted) (alterations adopted).

Plaintiff first bears the burden of establishing a prima facie case of age discrimination. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). To make a prima facie case of age discrimination, Plaintiff must show that "(1) she was . . . between the ages of 40 and 70, (2) she was subject to an adverse employment action, (3) a substantially younger person filled the position from which she was discharged, and (4) she was qualified to do the job for which she was rejected." Lawson v. Plantation Gen. Hosp., L.P., 704 F. Supp. 2d 1254, 1281 (S.D. Fla. 2010) (citing Chapman, 229 F.3d at 1024). If Plaintiff establishes a prima facie case of discrimination, Atlantic Waste must articulate a legitimate, nondiscriminatory reason for the challenged employment action. Chapman, 229 F.3d at 1024. A defendant employer's burden to articulate a reason is "exceedingly light," and "[s]o long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 770 (11th Cir. 2005).

Plaintiff has established a prima facie case of discrimination. The record contains evidence that Plaintiff was over forty years old, was removed from her position, was replaced by a younger employee, and was generally qualified for the position.[3] In response to Plaintiff's prima facie case,

---

[3] Atlantic Waste challenges that Plaintiff was qualified for her position because she had received warnings of deficient performance. (See doc. 23, pp. 22–23.) Plaintiff, however, maintains that she was "a good employee" and that she maintained satisfactory sales numbers throughout this time. (Doc. 32, pp. 20–21.) Atlantic Waste cites no caselaw in support of its contention that receiving a written warning would

Atlantic Waste argues that its decision to no longer have Plaintiff work as a Sales Manager was not discriminatory but a legitimate business decision based on her ongoing deficient performance in the role, including, specifically, the "loss of yet another customer." (Doc. 23, p. 23.) There is ample evidence on the record to support this position. (See, e.g., doc. 23-1 (Ben Wall's testimony about growing concern for Plaintiff's deficient job performance).) Plaintiff herself even acknowledged her reprimands, (see doc. 23-2, p. 15), and admitted that, in her opinion, "one of the reasons" she was terminated was the loss of the client, (id. at p. 36). Accordingly, Atlantic Waste successfully discharged its burden to show a nondiscriminatory reason.

Once a defendant articulates a legitimate, nondiscriminatory reason for the employment action, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (quoting Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1528 (11th Cir. 1997)). "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006). To establish pretext, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1538 (internal quotation omitted). "However, a reason is still not a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason."

---

disqualify an employee from performing that job. Accordingly, for purposes of this Motion and in the absence of further argument to the contrary, the Court will assume without deciding that Plaintiff was qualified to serve in the Sales Manager position at the time she was allegedly removed from her position.

Menefee v. Sanders Lead Co., 786 F. App'x 963, 966 (11th Cir. 2019) (citing Brooks, 446 F.3d at 1163).

Plaintiff claims she has established pretext because Atlantic Waste "always told her that she was doing a good job," she had positive sales records, she faced multiple comments concerning her age, and other older employees were threatened with termination. (Doc. 32, p. 21.) This evidence, even if it were supported by the record, is not enough to show Atlantic Waste's reasons for terminating her are pretextual.

Plaintiff's contention that she generally performed well at her job and that this somehow establishes that Atlantic Waste had a discriminatory motive lacks merit. "When an employer asserts that it fired the plaintiff for poor performance, it is not enough for the plaintiff to show that his performance was satisfactory." Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 872 (11th Cir. 2011) (citing Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)); Menefee, 2019 WL 9511330, at *9 ("Plaintiff must do more than merely show that his performance was, in fact, satisfactory . . ., [he] must show that Defendant did not actually consider him to have poor management of his department, and that, in actuality, [it] used that reason as pretextual cover for discriminating against him due to his age."). Beyond Ben Wall's statement that she was "not a bad Sales Manager," Plaintiff has not contested the evidence that the Walls had problems with her management. (Doc. 32, p. 21.) She even admits that Ben Wall told her that she needed to improve her performance, and that she lacked skills, including math, computation, and computer program capabilities, pertinent to her position. (See doc. 32-1, pp. 10–11 (undisputed that Plaintiff received a formal written warning about her performance deficiencies); doc. 23-2, p. 15 (admitting that Ben Wall "accused [her] of not being math oriented," that she "didn't know how to compute a compactor bid," and that she "was not very good at Excel").) Plaintiff also conceded that just

before she left the company, the Walls were upset with her because the sales team had lost a client, allegedly because of poor communication with the client. (Doc. 23-2, pp. 26–27, 36).

Plaintiff argues in her Response that Burke Wall "threatened to terminate Plaintiff and only the two other, oldest members of [her] department." (Doc. 32, p. 21.) Yet she does not direct the Court to any evidence supporting this contention, and the citation she does reference appears to contradict her. (See doc. 23-1, pp. 10–11 (testimony of Ben Wall that the two other employees to which Plaintiff presumably refers both "continued to work for Atlantic Waste well after [Plaintiff's] separation").) Atlantic Waste has submitted evidence that most of their long-term employees are over fifty. (Doc. 23-1, p. 11; doc. 23-4 ("[M]ost of the senior people at the company are in their 50s and 60s . . . [and they] all teased each other about being old, including [Plaintiff].")); see Melvin v. Fed. Express Corp., No. 1:17-CV-00789-CC-JCF, 2019 WL 11660602, at *9 (N.D. Ga. Jan. 28, 2019), report and recommendation adopted as modified, No. 1:17-CV-0789-CC, 2019 WL 11660600 (N.D. Ga. May 1, 2019), aff'd, 814 F. App'x 506 (11th Cir. 2020) (considering age of others in comparable positions to plaintiff).

Plaintiff's final position, that she endured derogatory comments about her age, likewise fails to establish pretext. It is true that "[a] plaintiff also can demonstrate pretext by showing that the decision maker made discriminatory remarks." Ritchie v. Indus. Steel, 426 F. App'x. 867, 872 (11th Cir. 2011). That said, "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish a pretext." Id. at 873 (citing Rojas v. Fla., 285 F.3d 1339, 1342–43 (11th Cir. 2002)). The record reveals two remarks made about Plaintiff's age: one where Ben Wall called her a "dinosaur," and another where, some six months before Plaintiff was removed from the Sales Manager job, Burke Wall said, "[Y]ou all would not believe how old she is." (Doc. 32-1, p. 40.) Plaintiff offers no further evidence or insight into how these two stray

remarks relate to her removal from her Sales Manager position.  See Ritchie, 426 F. App'x at 874 (frequent comments by decision makers that plaintiff was an "old man" could not establish pretext where no further evidence linked comments to preference for younger employees); Melvin, 2019 WL 11660602, at *9 (no evidence of age discrimination where comment about plaintiff's age was made months before his termination, and he provided no other evidence linking comment to decision to fire him); Menefee v. Sanders Lead Co., No. 2:17-CV-262-WC, 2019 WL 9511330, at *9 (M.D. Ala. Jan. 7, 2019), aff'd, 786 F. App'x 963 (11th Cir. 2019) (plaintiff failed to establish pretext through comments about his age because he "produced no evidence showing that the decisionmakers were preoccupied with his age" or that they ever "expressed a preference for younger employees"); Mann v. Morningstar Baptist Treatment Servs., No. 2:01-cv-114, 2002 U.S. Dist. LEXIS 21873, at *2, 9–10 (S.D. Ga. Oct. 1, 2002) (a few stray remarks referring to the plaintiff as an "old lady" could not support an inference that her termination was motivated by age discrimination).  Accordingly, Plaintiff has failed to raise a genuine issue of material fact that Atlantic Waste's articulated reasons for removing her from her position—her poor work performance and recent loss of an important client—were a pretext for discrimination.

Because Atlantic Waste has offered a legitimate nondiscriminatory reason as to why Plaintiff was removed from her Sales Manager Position, and Plaintiff has failed to rebut that reason with evidence of pretext, the Court **GRANTS** Atlantic Waste's Motion for Summary Judgment on Plaintiff's age discrimination claim.

## IV.   Retaliation

Finally, Atlantic Waste moves for summary judgment on Plaintiff's Retaliation Claim (Count III).  (Doc. 23, pp. 24–25.)  Title VII prohibits employers from discriminating against an employee because she "opposed . . . an unlawful employment practice . . . or because [s]he has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case for retaliation under Title VII, a plaintiff generally must show that (1) she engaged in statutorily protected activity; (2) she suffered the type of materially adverse action that would dissuade a reasonable employee from engaging in the statutorily protected activity; and (3) there was a causal relationship between the events. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Causation may be shown by "close temporal proximity between the statutorily protected and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). That said, "mere temporal proximity," without more, "must be very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotations omitted). Both the Supreme Court and the Eleventh Circuit have found "a three to four month disparity . . . to be insufficient to show causal connection." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Clark Cnty., 532 U.S. at 273.

Atlantic Waste argues that, even assuming that Plaintiff was fired, she has still failed to make a prima facie case of retaliation because she cannot show that her cited actions were the basis for her alleged dismissal.[4] (Doc. 23, pp. 24–25.) The only evidence that Plaintiff has cited to support the causation element of her retaliation claim is that she was fired "four months after complaining about sexual harassment [and] one month after Defendant was forced to ultimately fire [Freas]," and that her termination was also "around the same time" as her receipt of a subpoena to testify in court proceedings regarding Craig and Freas. (Doc. 32, p. 17.) Though she cites no

---

[4] Atlantic Waste challenges whether there was an adverse employment action at all because, it contends, "Plaintiff quit on June 29, 2020." (Doc. 23, p. 24.) Because Plaintiff has failed to establish the requisite causation, the Court need not decide whether Plaintiff voluntarily quit her position or whether she was involuntarily terminated.

caselaw in support, Plaintiff summarily states that she has carried her burden because "[t]hese are incredibly short periods of time given that [Plaintiff] had been employed with Defendant since 1999." (Id. at p. 19.)

As a preliminary matter, although Plaintiff received at least one subpoena to testify in a municipal court proceeding between Craig and Freas (to which there is no indication Atlantic Waste was a party), it is unclear when any subpoenas were served on her, when she would have been expected to testify, and, most importantly, it is undisputed that she never testified. (Doc. 32-1, p. 42.) While testifying in a court proceeding could be classified as protected activity, the Court does not see, and Plaintiff has failed to explain, how merely *receiving* a subpoena somehow equates to engaging in protected activity. Plaintiff speculates that Atlantic Waste believed she would have testified in Craig's favor and against Freas, but she cites no support for this theory. For instance, there is no evidence that Plaintiff was asked or voluntarily disclosed to anyone what the substance of her testimony would be or that Craig or anyone else communicated to anyone at Atlantic Waste that Plaintiff intended to testify against Freas. Accordingly, because Plaintiff has not shown how her receipt of a subpoena can be characterized as her own engagement in protected activity, the timing of that event (which has not been sufficiently shown by either party) cannot support Plaintiff's Title VII retaliation claim.

Thus, the only protected activity Plaintiff's retaliation claim can be based on is her sexual harassment complaint about Freas, who was ultimately terminated. Plaintiff candidly admits that she was fired four months after her complaint was made.[5] (Doc. 32, p. 19.) As previously stated,

---

[5] Plaintiff does not make clear whether the "complaint" that she points to as her protected activity was her verbal comment to Bashlor, sometime in January 2020, that Freas was a "creep" or the February 19, 2020, written statement about Freas's conduct, which she allegedly gave at the request of Atlantic Waste as part of its investigation into Craig's complaints about Freas. These two events occurred closely enough in time that the Court deems the timing difference immaterial for purposes of its analysis.

the Eleventh Circuit has found that "[e]ven a three-month interval between the protected expression and the employment action . . . is too long [to establish causation]."  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010).  Plaintiff concedes that, after giving her written statement about Freas in February, she made no further complaints about Freas through the time of his firing in May, (doc. 23-2, p. 26), and she admits that Freas was fired immediately after Craig complained about him making her feel uncomfortable, (doc. 32-1, p. 31).  Plaintiff provides no evidence linking Freas's termination to her and she has offered no other evidence to suggest that the Walls' employment actions against her were somehow retaliatory.  Accordingly, because a four-month period between the protected conduct and the adverse action is too great to infer retaliatory motive, and because Plaintiff has submitted no other evidence, she has failed to make a prima facie case of retaliation.  See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (a three-month period between protected activity and the adverse employment action, standing alone, failed to establish a causal connection of retaliatory discharge); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (without more, over three-month period between protected activity and adverse action was insufficient to prove causation); Windham v. Barr, No. 5:16-cv-83, 2019 WL 1412119, at *13 (S.D. Ga. Mar. 28, 2019) (a period of around two months "alone is not sufficient to establish a prima facie retaliation case").

Plaintiff has failed to present evidence of a causal relationship between any protected speech she made and any adverse employment action she suffered.  Therefore, a jury could not find for her on her claim of retaliation under Title VII, and the Court **GRANTS** Atlantic Waste's Motion on this claim.

## CONCLUSION

Plaintiff has failed to produce sufficient evidence to raise a genuine issue of material fact that she suffered sexual harassment that constituted a hostile work environment actionable against Atlantic Waste, that Atlantic Waste discriminated against her due to her age, or that it retaliated against for her complaints of sexual harassment.   Accordingly, the Court **GRANTS** Atlantic Waste's Motion for Summary Judgment on all counts.   (Doc. 23.)   With no further claims remaining, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED**, this 25th day of March, 2024.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA